# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COVINGTON SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ANCHOR TECHNOLOGIES OF FLORIDA, LLC; ANCHOR TECHNOLOGIES, LLC; CLIFTON BISHOP; KENNETH HARRIS; and NATASHA SMITH, individually and as the Independent Administrator of the Estate of EMONIE ROBINSON, deceased,<br><br>    Defendants. | Case No. 26-cv-939 |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Covington Specialty Insurance Company ("Covington"), by and through its attorneys, TRAUB LIEBERMAN STRAUS AND SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against the Defendants Anchor Technologies of Florida, LLC, Anchor Technologies, LLC (collectively "Anchor"), Clifton Bishop, Kenneth Harris and Natasha Smith, individually and as the Independent Administrator of the Estate of Emonie Robinson, deceased (collectively, where appropriate, the "Defendants"), alleges the following:

## NATURE OF THE ACTION

1. Covington is an insurance company that issued an insurance policy to "Anchor Technologies of Florida, LLC d/b/a Anchor Technologies, LLC," as the named insureds, bearing policy number VBA925102 00, for the policy period June 23, 2023 to June 23, 2024 ("the Policy").

2. Covington brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with

respect to obligations claimed to be owed by Covington to Anchor, Bishop and Harris in connection with the underlying liability lawsuit styled, *Natasha Smith, individually and as the Independent Administrator of the Estate of EMONIE ROBINSON, deceased, v. Meridian Private Yachts, LLC, et al.*, pending under Case No. 2025 L 006740, in the Circuit Court of Cook County, Illinois (the "Underlying Lawsuit").

3. The Underlying Lawsuit arises out of the death of Emonie Robinson, a passenger on a chartered yacht who was found unresponsive and passed away after consuming alcohol and illicit drugs while on the yacht. Covington seeks a declaration that no coverage is available to Anchor, Bishop and Harris under the Policy and that Covington has no obligation to defend or indemnify Anchor, Bishop or Harris in connection with the Underlying Lawsuit

4. There exists an actual controversy among the parties concerning their respective rights, duties and obligations under and pursuant to the Policy. Covington contends there is no obligation to defend or indemnify Anchor, Bishop or Harris in connection with the claims asserted in the Underlying Lawsuit based on the terms and conditions of the Policy and applicable law.

5. Covington has no adequate remedy at law and, therefore, desires a judicial determination of its rights, duties and obligations under and pursuant to the Policy. A judicial determination is necessary and appropriate at this time so that Covington may ascertain its rights and duties with respect to defense and indemnity under the Policy for the Underlying Lawsuit.

### JURISDICTION AND VENUE

6. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

7. Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the Underlying Lawsuit is pending in this district and a substantial part of the events giving rise to the Underlying Lawsuit occurred in this district.

## THE PARTIES

8. Covington is, and at all times relevant, has been a corporation organized under the laws of New Hampshire, with its principal place of business located in Georgia.

9. Anchor Technologies of Florida, LLC is, and at all times relevant, has been a limited liability company organized under the laws of Missouri, with its principal place of business located in Kenneth City, Florida.

10. Anchor Technologies, LLC is, and at all times relevant, has been a limited liability company organized under the laws of Missouri, with its principal place of business located in Kenneth City, Florida.

11. Anchor Technologies of Florida, LLC is registered in Florida as a foreign limited liability company and is using the name Anchor Technologies of Florida, LLC for the purpose of transacting business in Florida. Anchor Technologies of Florida, LLC identifies Anchor Technologies, LLC as the entity's name in its home state of Missouri.

12. Upon information and belief, the sole members of Anchor Technologies of Florida, LLC and Anchor Technologies, LLC are Zach Hatraf, who is domiciled in Clearwater, Florida, and Jeremy Nelson, who is domiciled in Tampa, Florida.

13. Upon information and belief, Bishop is, and at all times relevant, has been domiciled in Joliet, Illinois.

14. Upon information and belief, Harris is, and at all times relevant, has been domiciled in Chicago, Illinois.

15. Upon information and belief, Smith is, and at all times relevant, has been domiciled in Chicago, Illinois.

16. Upon information and belief, prior to her death, Emonie Robinson was domiciled in Illinois. Smith, in her capacity as the Independent Administrator of the Estate of Emonie Robinson is, and was at all times material hereto, deemed a citizen of Illinois per 28 U.S.C. § 1332(c)(2).

17. Smith, individually and as the Independent Administrator of the Estate, is the plaintiff in the Underlying Lawsuit and is joined as a defendant herein as a necessary party so that they may be bound by the judgment entered in this case. If Smith executes a stipulation agreeing to be bound by any judgment entered herein, Covington will voluntarily dismiss Smith and the Estate from this action.

## GENERAL ALLEGATIONS

**I.     The Underlying Lawsuit**

18. On May 23, 2025, Smith, individually and as the Independent Administrator of the Estate (collectively, where appropriate, the "Underlying Plaintiff") filed the Underlying Lawsuit. A copy of the Second Amended Complaint, which is the current operative pleading, is attached hereto as **Exhibit A**.

19. The Underlying Lawsuit arises out of an incident that occurred July 23, 2023, when Emonie Robinson was a passenger on a 50-foot yacht named the "Nauti Nate."

20. The Underlying Lawsuit alleges that Bishop was the owner, manager and president of Meridian Private Yachts, LLC and Meridian Private Yacht Technologies, LLC (collectively "Meridian") and that Bishop and/or Meridian owned and operated the Nauti Nate.

4

21. The Underlying Lawsuit alleges that, Anchor brokered the chartering of the Nauti Nate and that, on or prior to July 23, 2023, Ebony Howell/Tyra Washington charted the Nauti Nate through Meridian, Bishop, Anchor, Harris or others.

22. The Underlying Lawsuit alleges that, on July 23, 2023, Harris was the captain of the Nauti Nate.

23. The Underlying Lawsuit alleges that, on July 23, 2023, Emonie Robinson was invited to a party on the Nauti Nate, which was docked at the 31st Street Harbor in Chicago, Illinois.

24. The Underlying Lawsuit alleges that, on July 23, 2023, Emonie Robinson boarded the Nauti Nate around 1:00 pm or 2:00 pm and the Nauti Nate left the harbor at approximately 5:30 pm or 6:00 pm.

25. The Underlying Lawsuit alleges that passengers on the Nauti Nate were heavily drinking alcohol and consuming illicit drugs.

26. The Underlying Lawsuit alleges that one of the passengers laced Emonie Robinson's "beverage(s), or otherwise caused her to consume, methamphetamine[,]" after which she became unresponsive and could not be awoken.

27. The Underlying Lawsuit alleges that Emonie Robinson did not regain consciousness, was taken to the emergency room at or around 1:00 am or 1:30 am on July 24, 2023 and passed away on July 25, 2023.

28. The Underlying Lawsuit alleges that, as a result of the alleged negligence of Bishop, Harris and Anchor, Emonie Robinson suffered severe injuries, including cardiac arrest and symptoms of methamphetamine overdose after she was drugged.

29. In the Underlying Lawsuit, the following causes of action are asserted against Bishop based on his status as the "charteree" and owner of the Nauti Nate: negligence (wrongful death); survival act; and negligent entrustment (wrongful death).

30. In the Underlying Lawsuit, the Underlying Plaintiff asserts causes of action against Harris for negligence (wrongful death) and survival act.

31. In the Underlying Lawsuit, the following causes of action are asserted against Anchor: negligence (wrongful death); survival act; and negligent entrustment (wrongful death); negligent hiring; negligent selection; and respondeat superior.

## II. The Covington Policy

32. Covington issued a commercial general liability policy "Anchor Technologies of Florida, LLC d/b/a Anchor Technologies, LLC" as the named insureds, bearing policy number VBA925102 00, for the effective period June 23, 2023 to June 23, 2024. A copy of the Policy is attached hereto as **Exhibit B**.

33. The Policy is subject to limits of liability in the amount of $1,000,000 per "occurrence" and $2,000,000 in the aggregate.

34. The Policy Declarations identify the following location as all premises Anchor owns, rents or occupies: 260 1st Avenue South 200-183, St. Petersburg, FL 33701.

35. The Policy Declarations describe the Anchor's classification as "Buildings or Premises – office – premises occupied by employees of the insured – Other than Not-For-Profit."

36. The Commercial General Liability Coverage Form included in the Policy provides, in pertinent part, as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The

words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

\*\*\*

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

\*\*\*

**SECTION II – WHO IS AN INSURED**

1. If you are:[1]

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

---

[1] Modified by Endorsement GBA 104044 0820, titled "Who Is An Insured Amendment."

> **b**. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
>
> **c**. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> **d**. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
>
> **e**. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.
>
> **2.** Each of the following is also an insured:
>
> **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business […]
>
> ***

37. The Policy defines "employee," "leased worker," "temporary worker" and "volunteer worker" as follows:

> **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> ***
>
> **10** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
>
> ***

8

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

\*\*\*

38. The Policy includes a Classification Limitation Endorsement (GBA 106015 0221), which states as follows:

> The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C MEDICAL PAYMENTS, 2. Exclusions:
>
> "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of or related in any way to operations which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements.
>
> All other terms and conditions of this policy remain unchanged.

\*\*\*

39. The Policy includes an Absolute Aircraft, Auto and Watercraft Exclusion Endorsement, (Endorsement GBA 106068 1215), that deletes the Aircraft, Auto or Watercraft Exclusion in the main coverage form and replaces that exclusion with the following exclusion, which states that the Policy does not apply to:

> "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

9

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

\*\*\*

40. The Policy includes Limitation of Coverage to Designated Premises Endorsement (GBA 106073 0309), which states as follows:

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
>
> **SCHEDULE**
>
> | Premises: | REFER TO THE COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS, ITS ENDORSEMENTS AND SUPPLEMENTS |
> |---|---|
>
> (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
>
> 1. The ownership, maintenance or use of the premises shown in the Schedule; and
>
> 2. Occurring at the Premises shown in the Schedule.

\*\*\*

41. The Policy includes an Absolute Opioid and Controlled Substance Exclusion Endorsement (GBA 106151 0320), which states, in relevant part, as follows:

> The following is added as an item to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND

10

ADVERTISING INJURY LIABILITY, 2. Exclusions and COVERAGE C – MEDICAL PAYMENTS, 2. Exclusions:

**A**. This insurance does not apply to any liability for:

"Bodily injury", "property damage", "personal and advertising injury" or medical expenses arising out of, based upon, caused by, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, whether in whole or in part, the following:

1. Any actual or alleged use, abuse, misuse, illicit use, overuse, addiction, dependency, unlawful distribution, or diversion of any "Controlled Substance";
2. Any supervision, instruction, training, education, recommendation, guideline, warning or advice given, or which should have been given, in connection with any "Controlled Substance";
3. Inadequate or inaccurate evaluation, control or reporting of, or the failure to evaluate, control or report, the conduct or suspected conduct described in paragraph **A.1.** above;
4. The development, manufacture, preparation, promotion, marketing, selling, handling, distribution, or prescription of any "Controlled Substance";

\*\*\*

**B**. This exclusion applies even if the claims or suits against any insured:

\*\*\*

2. Allege negligence, including but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any Insured.

\*\*\*

**D**. For the purposes of this exclusion, "Controlled Substances" shall mean:

1. Any opioid or narcotic drug, narcotic medication, or narcotic substance of any type, nature or kind, including, but not limited to, buprenorphine, codeine, fentanyl, hydrocodone, morphine, oxymorphone, tapentadol, oxycontin, hydromorphone, medperidine, methadone, oxycodone, or naloxone;

    2. Any substance that is a controlled substance defined by or included in the Schedules of the Controlled Substance Act of the United States of America (21 U.S.C. § 801 et seq.) or any other judicial, statutory, regulatory or other legal measure of any nation, province, state, municipality or other governmental division or subdivision; or

    3. Any substance that is in the future labelled or determined to be any of the substances described in **D.1.** or **D.2.** above.

***

### III.   Covington's Disclaimer Of Coverage

42. On August 4, 2025, Covington issued correspondence disclaiming coverage to Anchor for the Underlying Lawsuit. A copy of Covington's August 4, 2025 correspondence is attached as **Exhibit C**.

43. September 9, 2025, Covington issued correspondence disclaiming coverage to Harris for the Underlying Lawsuit. A copy of Covington's September 9, 2025 correspondence is attached as s **Exhibit D**.

44. On December 12, 2025, counsel for Bishop and Harris issued correspondence to Covington disputing the grounds for Covington's September 9, 2025 disclaimer of coverage and demanding that Covington withdraw its September 9, 2025 disclaimer of coverage and provide Bishop and Harris a defense and indemnity in connection with the Underlying Lawsuit. A copy of Howard Brookins' December 12, 2025 correspondence is attached as s **Exhibit E**.

45. On January 13, 2026, Covington issued correspondence reiterating its disclaimer of coverage to Bishop and Harris and requesting that Bishop and Harris withdraw their tender of same. A copy of Covington's January 13, 2026 correspondence is attached as **Exhibit F**.

46. Despite Covington's request for Bishop and Harris to withdraw their tender, Bishop and Harris (including their counsel) have failed to withdraw their tender of the Underlying Lawsuit.

### COUNT I – DECLARATORY JUDGMENT
**(Bishop and Harris Do Not Qualify As An "Insured" Under the Policy)**

47. Covington incorporates and realleges by reference the allegations in Paragraphs 1 through 45 of its Complaint for Declaratory Judgment as paragraph 46 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

48. The Policy only affords coverage to those individuals and entities who qualify as an "insured."

49. The Policy identifies "Anchor Technologies of Florida, LLC" and "Anchor Technologies, LLC" as the Named Insured.

50. No other entities or individuals are specifically identified as "insureds" under the Policy.

51. Pursuant to the "Who Is An Insured" provision of the Policy, "volunteer workers" of Anchor qualify as an "insured" while performing duties related to the conduct of Anchor's business, and "employees" of Anchor qualify as an "insured" but only for acts within the scope of their employment by Anchor or while performing duties related to the conduct of Anchor's business.

52. At all times material, neither Bishop, nor Harris were employees of or volunteers for Anchor.

53. Based on the foregoing, Bishop and Harris do not qualify as an "insured" under the Policy such that Covington does not owe a duty to defend or indemnify Bishop or Harris in connection with the Underlying Lawsuit.

54. An actual controversy exists between Covington, Bishop and Harris, and by the terms and provisions of 28 U.S.C. §§ 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Covington Specialty Insurance Company, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b. Find and declare that Covington has no duty to defend or indemnify Bishop and Harris under the Policy in connection with the Underlying Lawsuit; and,

c. Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT II – DECLARATORY JUDGMENT**
**(The Classification Limitation Precludes Coverage for Anchor, Bishop and Harris)**

55. Covington incorporates and realleges by reference the allegations in Paragraphs 1 through 53 of its Complaint for Declaratory Judgment as paragraph 54 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

56. To the extent that Bishop and Harris qualify as an "insured" (which Covington does not concede), the Policy contains a "Classification Limitation," which precludes coverage for "'bodily injury' … arising out of or related in any way to operations which are not classified or shown on the Commercial General Liability Coverage Part Declarations, its endorsements or supplements."

57. The Policy Declarations identify Anchor's classification as "Buildings or Premises – office – premises occupied by employees of the insured – Other than Not-For-Profit."

58. The Underlying Lawsuit arises out of an incident that occurred in Chicago, Illinois when Emonie Robison was a passenger on a chartered yacht, suffered a cardiac arrest and

14

symptoms of methamphetamine overdose and passed away after consuming alcohol and illicit drugs while on the yacht.

59. The Underlying Lawsuit and Emonie Robison's "bodily injury" do not arise out of Anchor's operation of an office or premises occupied by its employees and, therefore, the Classification Limitation applies to preclude coverage for Anchor, Bishop and Harris.

60. Based on the foregoing, Covington does not owe a duty to defend or indemnify Anchor, Bishop or Harris in connection with the Underlying Lawsuit.

61. An actual controversy exists between Covington, Anchor, Bishop and Harris, and by the terms and provisions of 28 U.S.C. §§ 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Covington Specialty Insurance Company, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b. Find and declare that Covington has no duty to defend or indemnify Anchor, Bishop and Harris under the Policy in connection with the Underlying Lawsuit; and,

c. Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III – DECLARATORY JUDGMENT
**(The Designated Premises Limitation Precludes Coverage for Anchor, Bishop and Harris)**

62. Covington incorporates and realleges by reference the allegations in Paragraphs 1 through 60 of its Complaint for Declaratory Judgment as paragraph 61 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

15

63. To the extent that Bishop and Harris qualify as an "insured" (which Covington does not concede), the Policy contains a Designated Premises Limitation, which provides that the Policy only applies to "bodily injury" arising out of (i) "[t]he ownership, maintenance or use of the premises" located at 260 1st Avenue South 200-183, St. Petersburg, FL 33701, and (ii) occurring at 260 1st Avenue South 200-183, St. Petersburg, FL 33701.

64. The Underlying Lawsuit arises out of Emonie Robsinson's death, which occurred in Chicago, Illinois.

65. Thus, the Designated Premises Limitation applies to preclude coverage for Anchor, Bishop and Harris because Emonie Robison's "bodily injury" does not arise out of the ownership, maintenance or use of Anchor's premises in Saint Petersburg, Florida and did not occur at Anchor's premises in Saint Petersburg, Florida.

66. Based on the foregoing, Covington does not owe a duty to defend or indemnify Anchor, Bishop or Harris in connection with the Underlying Lawsuit.

67. An actual controversy exists between Covington, Anchor, Bishop and Harris, and by the terms and provisions of 28 U.S.C. §§ 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Covington Specialty Insurance Company, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

    b. Find and declare that Covington has no duty to defend or indemnify Anchor, Bishop and Harris under the Policy in connection with the Underlying Lawsuit; and,

    c. Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT IV – DECLARATORY JUDGMENT**
**(The Absolute Opioid and Controlled Substance Exclusion**
**Precludes Coverage for Anchor, Bishop and Harris)**

68. Covington incorporates and realleges by reference the allegations in Paragraphs 1 through 66 of its Complaint for Declaratory Judgment as paragraph 67 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

69. To the extent that Bishop and Harris qualify as an "insured" (which Covington does not concede), the Policy contains an Absolute Opioid and Controlled Substance Exclusion, which precludes coverage for "'bodily injury' … arising out of, based upon, caused by, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, whether in whole or in part," the actual or alleged use, abuse, misuse, overuse or unlawful distribution of any "Controlled Substance," and any supervision given or that should have been given in connection with any "Controlled Substance."

70. Under the Policy, a "Controlled Substances" means "[a]ny substance that is a controlled substance defined by or included in the Schedules of the Controlled Substance Act of the United States of America (21 U.S.C. § 801 et seq.)."

71. Pursuant to 28 U.S.C. §812, methamphetamine is identified as a Schedule II controlled substance.

72. The Underlying Lawsuit alleges that passengers on the Nauti Nate were heavily drinking alcohol and consuming illicit drugs, one of the passengers laced Emonie Robinson's "beverage(s), or otherwise caused her to consume, methamphetamine[,]" and she suffered cardiac arrest and symptoms of methamphetamine overdose and passed away on July 25, 2023.

73. Thus, the Absolute Opioid and Controlled Substance Exclusion applies to preclude coverage for Anchor, Bishop and Harris because Emonie Robison's "bodily injury" arises out of

17

and is based upon, caused by, attributable to, directly or indirectly resulted from, in whole or in part, the actual or alleged use, misuse, illicit use or overuse of a "Controlled Substance," the alleged failure to prevent the use of or overdose on drugs, and the alleged failure to intervene, provide medical attention or call for emergency services after Emonie Robison exhibited signs of a drug overdose.

74. Based on the foregoing, Covington does not owe a duty to defend or indemnify Anchor, Bishop or Harris in connection with the Underlying Lawsuit.

75. An actual controversy exists between Covington, Anchor, Bishop and Harris, and by the terms and provisions of 28 U.S.C. §§ 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Covington Specialty Insurance Company, respectfully prays that this Honorable Court:

- a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

- b. Find and declare that Covington has no duty to defend or indemnify Anchor, Bishop and Harris under the Policy in connection with the Underlying Lawsuit; and,

- c. Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT V – DECLARATORY JUDGMENT**
**(The Absolute Aircraft, Auto and Watercraft Exclusion**
**Precludes Coverage for Anchor, Bishop and Harris)**

76. Covington incorporates and realleges by reference the allegations in Paragraphs 1 through 74 of its Complaint for Declaratory Judgment as paragraph 75 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

77. To the extent that Bishop and Harris qualify as an "insured" (which Covington does not concede), the Policy contains an Absolute Aircraft, Auto and Watercraft Exclusion, which precludes coverage for "'bodily injury' arising out of or resulting from the ownership, maintenance, use or entrustment to others of any … watercraft."

78. The Underlying Lawsuit contains various allegations relating to the use and entrustment to others of a yacht, including allegations based on negligent supervision, hiring, training and monitoring of others in connection with the use of a yacht, such that the Absolute Aircraft, Auto and Watercraft Exclusion applies to preclude coverage for Anchor, Bishop and Harris.

79. Based on the foregoing, Covington does not owe a duty to defend or indemnify Anchor, Bishop or Harris in connection with the Underlying Lawsuit.

80. An actual controversy exists between Covington, Anchor, Bishop and Harris, and by the terms and provisions of 28 U.S.C. §§ 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Covington Specialty Insurance Company, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b. Find and declare that Covington has no duty to defend or indemnify Anchor, Bishop and Harris under the Policy in connection with the Underlying Lawsuit; and,

c. Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

Dated: January 27, 2026

Respectfully submitted,

COVINGTON SPECIALTY INSURANCE COMPANY

*/s/ Brian C. Bassett*
Brian C. Bassett

Brian C. Bassett (6285714)
Tony Hatzilabrou (6325050)
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY LLP
71 S. Wacker Dr., Ste. 2110
Chicago, Illinois 60606
Telephone: (312) 332-3900
Facsimile: (312) 332-2908
bbassett@tlsslaw.com
thatzilabrou@tlsslaw.com